United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE PERKINS,<br><br>        Plaintiff,<br><br>    v.<br><br>CONTRA COSTA COUNTY SHERIFF'S<br>DEPARTMENT J-TEAM, et al.,<br><br>        Defendants.<br><br>_____/ | No. C 07-02013 CW (PR)<br><br>ORDER (1) GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT;<br>(2) REFERRING CASE TO PRO<br>SE PRISONER SETTLEMENT<br>PROGRAM; AND (3) DIRECTING<br>SERVICE OF DEFENDANTS<br>RENAUD AND FULLER BY UNITED<br>STATES MARSHAL<br><br>(Docket no. 24) |

INTRODUCTION

On September 7, 2005, Contra Costa County Sheriff's Department J-Team Supervisor Sergeant M. Malone and Deputies R. Roberts and K. Westermann conducted a parole search of the residence at 3822 Chatworth Street, Pittsburg, California.  This was the address on record with the California parole authorities as the residence of Plaintiff Reggie Perkins.  On October 14, 2005, Sergeant Malone and Deputies R. Fuller and J. Moore along with California Parole Agent G. Renaud arrested Plaintiff in the bedroom of apartment number 149 at 2231 West Leland Road, Pittsburg, California.  What occurred during the course of the parole search of Plaintiff's residence in September, 2005 and his arrest in October, 2005 is the subject matter of this lawsuit.

On April 10, 2007, Plaintiff, a state prisoner currently incarcerated in Folsom State Prison, filed a pro se civil rights action against members of the J-Team.  On December 11, 2007, Plaintiff filed an amended complaint specifically naming Defendants Malone, Fuller, Renaud, Moore, Westermann and Roberts.  Plaintiff

raises Fourth Amendment claims of unreasonable search of his residence and excessive force in effectuating an arrest. (Am. Compl. at 3.)

In an Order dated January 15, 2008, the Court found that Plaintiff alleged a cognizable unreasonable search and seizure claim against Defendants Malone, Westermann and Roberts. (Jan. 15, 2008 Order at 4.) The Court also found that Plaintiff alleged a cognizable excessive force claim against Defendants Malone, Fuller, Renaud and Moore. (Id.)

On January 15, 2008, the Clerk of the Court sent a Notice of Lawsuit, a Request for Waiver of Service of Summons as well as the complaint to Defendants Malone, Westermann, Roberts, Fuller, Renaud and Moore. Service could not be completed on Defendant Renaud and Fuller, formerly of the Contra Costa County Sheriff's Department. Documents addressed to Defendants Renaud and Fuller were returned as "not forwardable" because these Defendants had "moved" and were "not at this address."

On June 16, 2008, Defendants Roberts, Malone, Westermann and Moore filed a motion for summary judgment on the grounds that there is no triable issue of material fact, and they are entitled to judgment as a matter of law. Defendants Roberts, Malone and Westermann seek summary judgment on the unreasonable search claim. Only Defendant Moore seeks summary judgment on the excessive force claim. Defendant Malone admits there are contested issues of fact precluding summary judgment on the excessive force claim against him. Because Defendants Fuller and Renaud have not been served, they did not join the motion for summary judgment as to the excessive force claim.

1    On August 19, 2008, Plaintiff filed an opposition.  On

2    September 16, 2008, Defendants Roberts, Malone, Westermann and

3    Moore filed a reply.

4         For the reasons discussed below, Defendants' motion for

5    summary judgment is GRANTED in part and DENIED in part.

6                            BACKGROUND

7    I.   Unreasonable Search of Parolee's Residence

8         A.   Plaintiff's Version

9         Plaintiff had been on parole and living at 3822 Chatworth with

10   his mother Betty Perkins and his stepfather since February, 2005

11   until the date of the incident, September 7, 2005.  (Pl.'s Depo. at

12   4-5.)[1]  The residence at 3822 Chatworth was the address on record

13   with Plaintiff's parole officer, and Plaintiff was subject to a

14   search condition as part of his parole.  (Id. at 4, 11.)

15        Plaintiff alleges that on the evening of September 7, 2005,

16   Defendants Malone, Westermann and Roberts "kicked the door in" and

17   entered his residence when no one was home.  (Id. at 4-6, 10.)

18   Plaintiff further alleges that Defendants conducted "an illegal

19   search and seizure" of his residence, without a warrant.  (Verified

20   Am. Compl. at 5.)  Plaintiff's mother's niece, Ray Ann Thomas,

21   arrived at the residence while Defendants were conducting their

22   search.  (Thomas Decl. ¶ 3.)  Plaintiff's mother had summoned

23   Thomas to check on the house, following an alarm system alert.

24   _____

25        [1] Defendants have attached portions of Plaintiff's deposition
     relating to the unreasonable search claim in support of their
26   motion for summary judgment.  (Mot. for Summ. J., Ex. A.)  The
     portion of the deposition relating to the excessive force claim is
27   not attached to Defendants' motion.  The deposition transcript has
     only time notations in place of page numbers; for ease of
28   reference, the Court has numbered these pages, beginning at page
     one on the page with the footer, "Perkins, Reggie 4.4.08: 21:7 -
     22.9."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(<u>Id.</u> ¶ 2.)  When Thomas arrived at 3822 Chatworth, she noticed that the door had been kicked down.  (<u>Id.</u> ¶ 7.)  When she entered the residence, Defendants, who were still searching, "drew there [sic] weapons" and pointed them at her.  (<u>Id.</u> ¶ 2.)  Thomas observed as Defendants "searched through all the rooms . . . through all the closets and drawer draws [sic], throwing personal items on the floor, clothes were tossed on the floor in every bedroom."  (<u>Id.</u> ¶ 3.)  When Plaintiff's mother returned home the following day, she found her "entire house was trashed, every bedroom in [her] house had been searched and trashed, clothes were all over the floor . . . personal items were tossed all over the floor."  (Betty Perkins Decl. ¶ 4.)

    B.    Defendants Malone's, Roberts's and Westermann's Version

    Defendants Malone, Roberts and Westermann acknowledge that, after knocking numerous times on the door at 3822 Chatworth and receiving no answer, they "forced open the door and went into the house."  (Malone Decl. ¶ 4.)  Prior to searching Plaintiff's residence, Defendants had conducted surveillance of the house; on the afternoon of September 7, 2005, Defendant Malone "saw Reggie Perkins arrive at 3822 Chatworth and go into the house, then leave."  (<u>Id.</u> ¶ 3.)  Defendant Malone contacted Plaintiff's parole officer, in order to confirm that Plaintiff was on parole, and that 3822 Chatworth was the home address on file with his parole officer.  (<u>Id.</u>)  Defendants conducted their surveillance pursuant to an investigation involving Plaintiff, who "was suspected to be one of several men who committed a violent and extended home invasion robbery that occurred in late August 2005."  (Roberts Decl. ¶ 3.)

4

In contrast to Plaintiff's allegations, Defendants Malone, Roberts and Westermann allege that they searched "only common areas and the room [they] thought was Perkins'" in order to secure the house and ensure their own safety. (Roberts Decl. ¶ 4; Malone Decl. ¶ 4.) Defendants took mail and photographs from the room they believed was Plaintiff's as indicia that he lived at the residence. (Malone Decl. ¶ 4.)

II.  Excessive Force at Arrest

In October, 2005, Defendants Malone, Moore, Renaud and Fuller continued to investigate the violent home invasion robberies in which Plaintiff was a suspect. (Moore Decl. ¶ 2-4.) Defendant Moore also knew "there was an outstanding Ramey warrant for Perkins' arrest that had been issued based on probable cause, and a warrant for his arrest for parole violation." (Id. ¶ 4.) Defendant Moore states that he "learned from California parole agent Renaud, on the same day[,] that he had been reliably informed Reggie Perkins had recently been at an address at 2231 Leland Road, #149, Pittsburg, CA . . . ." (Id. ¶ 3.) On October 14, 2005, Defendants Moore and Renaud as well as other officers participated in the surveillance of apartment number 149 at 2231 Leland. (Id. ¶ 4.) At around 10:34 A.M., Agent Renaud told the other officers present that he saw Plaintiff "come out of the apartment and smoke a cigarette, then go back in the apartment." (Id.) Defendant Moore then called the J-Team officers to assist in arresting Plaintiff. (Id. ¶ 5.) The J-Team officers forced their way into apartment number 149 at 2231 Leland in search of Plaintiff. (Id. ¶ 6; Pl.'s Decl. ¶ 3.) At this point, the facts according to Plaintiff and Defendant Moore differ significantly.

A.   Plaintiff's Version

At the time of the incident, Plaintiff knew that he had violated parole and that a warrant had been issued for his arrest. (Pl.'s Decl. ¶ 2.) He was hiding in the master bedroom closet of his friend's residence, apartment number 149 at 2231 Leland. (Id. ¶ 3.) From the closet, he heard Defendant Moore yell: "Come out of the closet and show your hands." (Id. ¶ 4.) After Plaintiff heard Defendant Moore call for the K-9 unit, he "surrendered by slowly showing [his] hands . . . from underneath the pile of clothes as instructed." (Id.) Plaintiff alleges that Defendant Renaud next "grabbed [his] right hand, snatche[d] [him] out of the closet, and pushed [him] to the floor, with the assistance from other officers." (Id.) Plaintiff was "lying face down on the floor with both . . . arms stretched out in front." (Id. ¶ 5.) Defendant Renaud was his right hand, and Defendant Moore was holding his left. (Id.) Plaintiff alleges he did not resist arrest or attempt to snatch his hand away from the officers. (Id.)

Plaintiff alleges that once he was on the ground, with his arms pinned down, Defendants Malone and Fuller committed "assault and battery." (Id. ¶ 6.) Specifically, Plaintiff alleges that Defendant Malone "thrust the barrel of a gun furiously into [his] back," leaving a "half inch circular puncture wound." (Id. ¶¶ 6, 15.) Furthermore, Defendant Fuller "impetuously started punching," and then Defendant Malone threw "no less than 5 and no more than 12 punches" to the left side of Plaintiff's face. (Id. ¶ 6.) Defendant Renaud then "brought [Plaintiff's] right arm back," and handcuffed Plaintiff. (Id.) An ambulance was called to the scene. (Id. at 8.) Plaintiff claims that he suffered "small abrasions to

United States District Court
For the Northern District of California

6

[his] left cheek and forehead, and another to the left side of [his] back." (Id. ¶ 9.) Plaintiff claims that Defendant Roberts "refused" when the paramedics offered to take Plaintiff to the hospital. (Id. ¶ 9.) Instead, the officers transported Plaintiff to get his x-rays taken at the radiology department at the "Contra Costa Regional Medical Center, Health Center, Health Services." (Id. ¶ 11.) Plaintiff was then booked in the county jail, where he complained of "head and back pains, and a lost [sic] of focus in [his] left eye." (Id. at 12.) Plaintiff also alleges he received a "half an inch barrel imprint" on his back. (Id. ¶ 13.)

B. Defendant Moore's Version

Defendant Moore states, "At no time did I hit Perkins or see another officer hit him." (Moore Decl. ¶ 9.) Defendant Moore describes forcing open the door at the apartment in order to effect Plaintiff's arrest. (Id. ¶ 5-6.) At the time he entered the apartment, Defendant Moore believed Plaintiff "had a gun, and . . . knew he was wanted by the police and was actively avoiding arrest." (Id. ¶ 5.) Defendant Moore also believed that Plaintiff had "been committing violent home invasion robberies." (Id.) In one of these robberies

> the suspects had seized and bound two female victims in
> their home at gunpoint, stole their credit cards and ATM
> cards and obtained their PIN numbers by threats of
> violence, and then had held them hostage in her [sic]
> home at gunpoint while accomplices used the cards and PIN
> to obtain cash and goods.

(Malone Decl. ¶ 2.)

After entering the apartment, Defendant Moore began to search for Plaintiff. (Moore Decl. ¶ 6.) In the master bedroom closet, Defendant Moore "felt body heat," and ordered Plaintiff "to show his hands and come out." (Id.) When Plaintiff did not immediately

respond, Defendant Moore asked for the assistance of the K-9

officer.  (<u>Id.</u>)  Then, Plaintiff "put his hand out from the

clothes."  (<u>Id.</u>)  Defendant Moore describes watching Defendant

Renaud grab Plaintiff's extended hand and pull him from the closet

and then watching Plaintiff land face-down on the floor.  (<u>Id.</u> ¶ 7.)

Defendant Moore states that Plaintiff then "put his hands to his

waist" and "[d]espite commands he did not show his hands."  (<u>Id.</u>)

But Defendants Moore and Renaud were able to cuff him "after a

moment or two."  (<u>Id.</u>)  In sum, Defendant Moore states, "I used only

the force necessary to make the arrest and ensure my own safety and

that of other officers at the scene."  (<u>Id.</u> ¶ 9.)  After Plaintiff

had been handcuffed, Defendant Moore noticed that Plaintiff had

received "several abrasions to his face and nose when he fell to the

floor, apparently from CD and DVD boxes and other items that were

scattered on the floor."  (<u>Id.</u> ¶ 8.)  Defendant Moore called an

ambulance "as a precaution."  (<u>Id.</u>)  Plaintiff was then treated for

his abrasions.  (<u>Id.</u>)

DISCUSSION

I.   Legal Standard For Summary Judgment

Summary judgment is properly granted when no genuine and

disputed issues of material fact remain and when, viewing the

evidence most favorably to the non-moving party, the movant is

clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56;

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v.</u>

<u>Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the Court must regard as true

the opposing party's evidence, if supported by affidavits or other

**United States District Court**
For the Northern District of California

1   evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d

2   at 1289.   The Court must draw all reasonable inferences in favor of

3   the party against whom summary judgment is sought.   <u>Matsushita Elec.</u>

4   <u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986);

5   <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558

6   (9th Cir. 1991).   A verified complaint may be used as an opposing

7   affidavit under Rule 56, as long as it is based on personal

8   knowledge and sets forth specific facts admissible in evidence.

9   <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

10       Material facts which would preclude entry of summary judgment

11  are those which, under applicable substantive law, may affect the

12  outcome of the case.   The substantive law will identify which facts

13  are material.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

14  (1986).

15      Where the moving party does not bear the burden of proof on an

16  issue at trial, the moving party may discharge its burden of

17  production by either of two methods:

18          The moving party may produce evidence negating an
            essential element of the nonmoving party's case, or, after
19          suitable discovery, the moving party may show that the
            nonmoving party does not have enough evidence of an
20          essential element of its claim or defense to carry its
            ultimate burden of persuasion at trial.

21  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210

22  F.3d 1099, 1106 (9th Cir. 2000).

23      If the moving party discharges its burden by showing an

24  absence of evidence to support an essential element of a claim or

25  defense, it is not required to produce evidence showing the absence

26  of a material fact on such issues, or to support its motion with

27  evidence negating the non-moving party's claim.   <u>Id.</u>; <u>see also</u>

28  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>

United States District Court
For the Northern District of California

NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id.  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

II.  Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their motion for summary judgment, Defendants have submitted declarations by Defendants Moore, Malone and Roberts, as well as by their attorney, Bernard Knapp (docket nos. 27, 28, 29, 26).

Plaintiff verified his amended complaint filed on December 11, 2007 by signing it under penalty of perjury.  Also in the record is Plaintiff's Opposition, which is not signed under penalty of

1  perjury.   However, the four attached declarations by Plaintiff,

2  Plaintiff's cousin Ray Ann Thomas, his mother Betty Perkins and his

3  stepfather David Battle are signed under penalty of perjury.

4  III. Fourth Amendment Unreasonable Search Claim

5      Plaintiff claims that Defendants Malone, Westermann and

6  Roberts conducted an unreasonable search of his residence at 3822

7  Chatworth on September 7, 2005.

8      A.   Applicable Legal Standard

9      The Fourth Amendment provides:  "The right of the people to be

10  secure in their persons, houses, papers, and effects, against

11  unreasonable searches and seizures, shall not be violated, and no

12  Warrants shall issue, but upon probable cause."  U.S. Const. amend.

13  IV.  However, where a parolee agrees in writing to be subject to

14  search or seizure at any time, without warrant or cause, not even

15  reasonable suspicion is required for a legal search.  Samson v.

16  California, 547 U.S. 843, 846 (2006).

17      Searches of parolees must be based on knowledge that the

18  target is subject to a parole search condition.  See Moreno v.

19  Baca, 431 F.3d 633, 641 (9th Cir. 2005).  Law enforcement officers

20  "must have probable cause to believe that the parolee is a resident

21  of the house to be searched."  Motley v. Parks, 432 F.3d 1072, 1080

22  (9th Cir. 2005).  A parole condition that permits warrantless

23  searches allows officers limited authority to search a house even

24  if other people reside there.  Id. at 1079.

25      A search of a parolee's residence must comport with the

26  demands of the federal Constitution.  United States v. Crawford,

27  323 F.3d 700, 708 n.4 (9th Cir. 2003).  The Supreme Court has

28  rejected the idea that parolees have no Fourth Amendment rights.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   Samson, 547 U.S. at 850 n.2.   An examination of the "totality of

2   the circumstances" is needed to determine whether a search is

3   reasonable within the meaning of the Fourth Amendment.   Id. at 848

4   (quoting United States v. Knights, 534 U.S. 112, 118 (2001)).   "The

5   touchstone of the Fourth Amendment is reasonableness, and the

6   reasonableness of a search is determined 'by assessing, on the one

7   hand, the degree to which it intrudes upon an individual's privacy

8   and, on the other, the degree to which it is needed for the

9   promotion of legitimate governmental interests.'"   Knights, 534

10  U.S. at 118-19 (citing Wyoming v. Houghton, 526 U.S. 295, 300

11  (1999)).

12      B.   Analysis

13      Defendants Malone, Westermann and Roberts were reasonably sure

14  that Plaintiff resided at 3822 Chatworth and that he was subject to

15  a parole search condition.   Plaintiff does not dispute this.

16  Therefore, Defendants had authority to search Plaintiff's residence

17  without a warrant.   Samson, 547 U.S. at 846.   Even if Defendants

18  searched the right residence, they were required to conduct a

19  reasonable search.   See id. at 848.   Defendants knocked on

20  Plaintiff's front door and no one answered.   Although Defendants

21  were investigating Plaintiff's involvement in a violent home

22  invasion robbery, they present no evidence that they had an urgent

23  need to enter his home at that time.   Instead of conducting the

24  search at another time, when Plaintiff or his parents were home,

25  Defendants knocked down the door to gain entry.   Viewed in the

26  light most favorable to Plaintiff as is required in a defendant's

27  motion for summary judgment, the facts indicate that Defendants

28  acted unreasonably.   See Knights, 534 U.S. at 118-19.   Accordingly,

United States District Court
For the Northern District of California

Defendants Malone, Westermann and Roberts are not entitled to summary judgment on the unreasonable search claim as a matter of law.

C.   Qualified Immunity Defense to Unreasonable Search Claim

Defendants Malone, Roberts and Westermann argue in the alternative that summary judgment is warranted because, as government officials, they are entitled to qualified immunity from Plaintiff's unreasonable search claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant

**United States District Court**
For the Northern District of California

cannot be on notice that such conduct is unlawful.  <u>Rodis v. City and County of S.F.</u>, No. 05-15522, slip op. 2955, 2966 (9th Cir. Mar. 9, 2009) (applying <u>Pearson</u> to find no clearly established right before evaluating whether there was a deprivation).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  <u>Saucier</u>, 533 U.S. at 202.

Even though Defendants' actions may have been unreasonable, Plaintiff has not provided any clearly established law indicating that it is unconstitutional to effect a forcible entry to conduct a parole search.  Therefore, Defendants would not have been on notice that their conduct was unlawful.  <u>See Rodis</u>, slip op. at 2966.  Defendants Malone, Roberts and Westermann are entitled to qualified immunity with respect to Plaintiff's unreasonable search claim and thus are entitled to summary judgment as a matter of law.

IV.  Fourth Amendment Excessive Force Claim

Plaintiff claims that Defendants Moore, Malone, Fuller and Renaud used excessive force in arresting him on October 14, 2005.  The Court previously determined that this claim is cognizable under the Fourth Amendment.  Only Defendant Moore has sought summary judgment.

A.  Applicable Legal Standard

The reasonableness of a search or seizure depends "on <u>how</u> it is carried out."  <u>Tennessee v. Garner</u>, 471 U.S. 1, 7-8 (1985) (emphasis in original).  The reasonableness test established in <u>Graham v. Connor</u>, 490 U.S. 386 (1989), applies to cases involving police use of excessive force in making stops or arrests, and to

the manner in which the police conduct any search or seizure.  See Franklin, 31 F.3d at 876.

Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Graham, 490 U.S. at 396.  Specifically, the force applied by officers must be balanced against the need for that force.  See Drummond v. City of Anaheim, 343 F.3d 1052, 1058-60 (9th Cir. 2003).

In Graham, the United States Supreme Court listed several factors to determine the reasonableness of the use of force under the Fourth Amendment:  (1) severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, and (4) whether the totality of the circumstances justified a particular sort of seizure.  490 U.S. at 396.  These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered.  Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th Cir. 1995).  Furthermore, the reasonableness of a "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.

Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct.  See Forrester v. City of San Diego, 25 F.3d 804, 806-07 (9th Cir. 1994), cert. denied, 513 U.S. 1152

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(1995) (using minimal and controlled force in manner designed to limit injuries reasonable); see also Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment), cert. denied, 515 U.S. 1159 (1995).

Police officers may be held liable if they have an opportunity to intercede but fail to do so when their fellow officers violate the constitutional rights of a plaintiff. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000); Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004). The passive defendant violates a constitutional right that "is analytically the same as the right violated by the person who strikes the blows." United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996). On the other hand, if an officer is not present during a constitutional violation, or if a violation happens so quickly that an officer had no "realistic opportunity" to intercede, then the officer is not liable for failing to intercede. Cunningham, 229 F.3d at 1290.

A defendant is entitled to summary judgment on a Fourth Amendment use of force claim where there is no genuine issue for trial because the record taken as a whole would not lead a rational trier of fact to find for the plaintiff. See Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002) (summary judgment in favor of defendant proper where evidence in the record in support of plaintiff's excessive force claim was "woefully sparse"). Similarly, summary judgment will be available if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was

United States District Court
For the Northern District of California

1   objectively reasonable under the circumstances.  See Johnson v.

2   County of Los Angeles, 340 F.3d 787, 792-93 (9th Cir. 2003)

3   (officer's actions dragging suspect out of a vehicle were

4   reasonable where suspect was stuck and officer was afraid suspect

5   had weapon).

6        On the other hand, if direct evidence produced by the moving

7   party conflicts with direct evidence produced by the nonmoving

8   party, the court must assume the truth of the evidence set forth by

9   the nonmoving party with respect to that fact.  See Leslie v. Grupo

10  ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The district court may

11  not resolve disputed issues of material fact by crediting one

12  party's version of events and ignoring another.  Wall v. County of

13  Orange, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely

14  on the defendants' statement of fact [in deciding a summary

15  judgment motion], the district court became a jury.").

16       B.   Analysis

17       Plaintiff alleges that Defendants Moore, Renaud, Fuller and

18  Malone used excessive force in arresting him.  (Pl.'s Decl. ¶¶ 4-

19  6.)  Specifically, Plaintiff alleges that Defendants Moore and

20  Renaud used excessive force during his arrest by holding his left

21  arm, while Defendants Malone and Fuller committed "assault and

22  battery," hitting and punching him.  (Pl.'s Decl. ¶ 6.)  Defendant

23  Moore acknowledges that he grabbed Plaintiff by the wrist and

24  assisted in cuffing him, but he says he used "only that force [he]

25  believed necessary to make the arrest and ensure [his] own safety

26  and that of other officers."  (Moore Decl. ¶¶ 7, 9.)  Defendant

27  Moore was not required to use the least intrusive degree of force

28  possible; he was required only to act within a reasonable range of

17

United States District Court
For the Northern District of California

conduct.  Forrester, 25 F.3d at 806-07.  Here, Defendant Moore

acted reasonably in grabbing Plaintiff, who was believed to be

dangerous, and handcuffing him.  The undisputed facts show that the

force used by Defendant Moore in arresting Plaintiff was

objectively reasonable.

Defendant Moore also denies seeing other officers hit

Plaintiff.  (Moore Decl. ¶ 9.)  Plaintiff, on the other hand,

alleges that Defendant Malone, along with Defendant Fuller, hit him

multiple times, inflicting a "half inch circular puncture wound."

(Pl.'s Decl. ¶¶ 6, 14, 15.)  Even if Defendants believed that

Plaintiff "posed an immediate threat" to their safety, this threat

must be evaluated within the totality of the circumstances and

balanced against the amount of force Defendants applied.  Graham,

490 U.S. at 396; Drummond, 343 F.3d at 1058-60.  Plaintiff alleges

that he was not actively resisting arrest, he was lying face down,

and officers held down his arms.  (Pl.'s Decl. ¶ 6.)  Although

Defendant Moore denies that the beating occurred, Plaintiff has

testified otherwise.  Thus, Plaintiff has created a genuine issue

of fact as to whether Defendants Malone and Fuller applied

constitutionally excessive force in punching and hitting a subdued

suspect.  See Drummond, 343 F.3d at 1058-60 (officers used

excessive force in kneeling and pressing their weight against the

torso and neck of a suspect who was handcuffed and lying on the

ground without offering resistance); Blankenhorn v. City of Orange,

485 F.3d 463, 477 (9th Cir. 2007) (officers used excessive force

when they punched plaintiff and used a gang tackle and hobble

restraints to take him into custody).

If the force used against Plaintiff by Defendants Malone and

United States District Court
For the Northern District of California

1  Fuller did amount to a Fourth Amendment violation, Defendant Moore

2  is potentially liable for failing to intervene to prevent the

3  constitutional violation.  Defendant Moore argues that he had no

4  opportunity to intervene to prevent the alleged acts of excessive

5  force, because the timing of the events was "rapid" and "fluid."

6  (Mot. for Summ. J. at 11.)  However, Plaintiff alleges that

7  officers had time to inflict a "half inch circular puncture wound"

8  on his back with the barrel of a gun and to punch him five to

9  twelve times.  (Pl.'s Decl. ¶ 6.)  Plaintiff's allegations suggest

10 that the timing of events was not so rapid and fluid as to preclude

11 Defendant Moore from interceding.  See Koon, 34 F.3d at 1447 n.25

12 (finding liability for failure to intervene where one officer

13 witnesses another striking blows).  Plaintiff has created a genuine

14 issue of fact as to whether Defendant Moore had an opportunity to

15 intervene to prevent the use excessive force against Plaintiff by

16 other officers.  Therefore, the Court finds that Defendant Moore is

17 not entitled to summary judgment on the excessive force claim as a

18 matter of law.

19 V.   Qualified Immunity Defense to Excessive Force Claim

20      Defendant Moore argues, in the alternative, that summary

21 judgment is warranted because, as a government official, he is

22 entitled to qualified immunity from Plaintiff's excessive force

23 claim.

24      A.   Standard of Review

25      Graham does not always give a clear answer as to whether a

26 particular application of force will be deemed excessive by the

27 courts.  Saucier, 533 U.S. at 204.  This is the nature of a test

28 which must accommodate limitless factual circumstances.  Id.

**United States District Court**
For the Northern District of California

1    Qualified immunity operates in excessive force cases, then, to

2    protect officers from the sometimes "hazy border between excessive

3    and acceptable force." Id. at 206 (citation omitted).

4        B.   Analysis

5        In applying the first prong of Saucier to determine whether

6    there was a constitutional violation, the Court has found that,

7    viewing the evidence in the light most favorable to Plaintiff,

8    Defendant Moore's failure to intervene to prevent the use of

9    excessive force amounts to a Fourth Amendment violation.

10       Applying the second prong of Saucier, the Court must determine

11   whether the right violated was "clearly established." Deorle v.

12   Rutherford, 272 F.3d 1272, 1287-87 (9th Cir. 2001).  It is not

13   disputed that, at the time of Defendant Moore's actions, the use of

14   excessive force by a law enforcement officer in effectuating an

15   arrest was a violation of the Fourth Amendment.  Furthermore, the

16   case law at the time of Defendant Moore's actions in this case

17   clearly prohibited failing to intervene to prevent the use of

18   excessive force by his co-Defendants, given the opportunity to do

19   so.  See Motley, 383 F.3d at 1071 (finding liability for failing to

20   intervene to stop harassment in violation of the Fourth Amendment);

21   Koon, 34 F.3d at 1447 n.25.  A reasonable officer could not have

22   believed that failing to intervene to prevent the amount of force

23   used -- punching and beating a suspect while handcuffing him -- was

24   lawful in light of clearly established law and the information that

25   Defendant Moore possessed at the time of the incident.  See

26   Saucier, 533 U.S. at 205.  Accordingly, Defendant Moore is not

27   entitled to qualified immunity as a matter of law with respect to

28   Plaintiff's claim of excessive force based on the failure to

intervene to prevent the excessive force used against him during arrest.

CONCLUSION

For the foregoing reasons,

1.    Defendants' motion for summary judgment is GRANTED in PART and DENIED in PART (docket no. 24).   Summary judgment is GRANTED as to Plaintiff's unreasonable search claim against Defendants Malone, Westermann and Roberts and DENIED as to Plaintiff's excessive force claim against Defendant Moore.

2.    Defendants Renaud and Fuller have not been served in this action.  The Court has been provided with the last known addresses of Defendants Renaud and Fuller in order to serve them.  Good cause appearing therefore, the United States Marshal is hereby ORDERED to attempt to effect personal service upon Defendants Renaud and Fuller.  Because Plaintiff is proceeding in forma pauperis, he is entitled to such service by the United States Marshal.  Fed. Rule Civ. P. 4(c)(2).  The Clerk shall provide the United States Marshal with the necessary summons and copies of (1) the complaint (docket no. 1); (2) the amended complaint (docket no. 6); (3) the Court's January 15, 2008 Order (docket no. 7); and (4) this Order.

The Clerk shall include on the summons form, USM 285, the following special instructions for Defendant Renaud:

> Pursuant to Federal Rule of Civil Procedure 4(e)(2), the United States Marshal shall serve G. Renaud "personally" or at his "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein," or serve an agent of G. Renaud "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).  The address for such service is 1515 Clay Street, 10th Floor, Oakland, California 94612.

The Clerk shall do the same for Defendant Fuller:

> Pursuant to Federal Rule of Civil Procedure 4(e)(2), the

United States District Court
For the Northern District of California

1  United States Marshal shall serve Richard Fuller
"personally" or at his "dwelling house or usual place of
2  abode with some person of suitable age and discretion
then residing therein," or serve an agent of Richard
3  Fuller "authorized by appointment or by law to receive
service of process." Fed. R. Civ. P. 4(e)(2).  The
4  address for such service is West County Detention
Facility, 5555 Giant Highway, Richmond, California
5  94806-6002.

6      The United States Marshal shall attempt personal service

7  within thirty (30) days of the date of this Order.

8      3.   Defendants Renaud and Fuller shall answer the complaint

9  and file a motion for summary judgment or other dispositive motion

10 as directed in paragraph 6 of the Court's January 15, 2008 Order.

11     4.   The Northern District of California has established a Pro

12 Se Prisoner Settlement Program.  Certain prisoner civil rights

13 cases may be referred to a magistrate judge for a settlement

14 conference.  The Court finds that a referral is in order now that

15 Plaintiff's excessive force claim has survived summary judgment.

16 Thus, this case is REFERRED to Magistrate Judge Vadas for a

17 settlement conference.

18     The conference shall take place within one-hundred twenty

19 (120) days of the date of this Order, or as soon thereafter as is

20 convenient to the magistrate judge's calendar.  Magistrate Judge

21 Vadas shall coordinate a time and date for the conference with all

22 interested parties and/or their representatives and, within ten

23 (10) days after the conclusion of the conference, file with the

24 Court a report regarding the conference.

25     The Clerk shall provide a copy of this Order, and copies of

26 documents from the court file that are not accessible

27 electronically, to Magistrate Judge Vadas.

28     5.   The Clerk shall send a copy of this Order to Plaintiff.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

        6.    The Clerk shall prepare an Order for Pretrial
Preparation, setting the case for a pretrial conference and a five-
day jury trial.

        7.    This Order terminates Docket no. 24.

        IT IS SO ORDERED.



Dated: 3/16/09        _____
                      CLAUDIA WILKEN
                      United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

REGGIE PERKINS,

        Plaintiff,

   v.

CONTRA COSTA COUNTY et al,

        Defendant.

_____/

Case Number: CV07-02013 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 16, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Reggie  Perkins J-24040
44-Bed #04
P.O. Box 2400
Susanville,  CA 96127

Magistrate Judge Nandor Vadas
U.S. District Court
P.O. Box 1306
Eureka, CA  95502

Dated: March 16, 2009

                        Richard W. Wieking, Clerk
                        By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California